UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

MELISSA REN'E KENNEDY     )
                               )
    Plaintiff,            )
                               )     Case No: 2:12-CV-226
   v.                   )
                               )     Judge Curtis L. Collier
                               )
COMMISSIONER OF SOCIAL SECURITY   )
                               )
    Defendant.        )

## M E M O R A N D U M

Plaintiff Melissa Ren'e Kennedy ("Plaintiff") brought this action on June 1, 2012 seeking judicial review of the final decision of the Commissioner of Social Security ("Defendant") denying Plaintiff's claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1382. The Court referred the matter to United States Magistrate Judge Susan K. Lee, pursuant to 28 U.S.C. § 636(b) and in accordance with Rule 72(b) of the Federal Rules of Civil Procedure for a report and recommendation ("R&R") regarding the disposition of Plaintiff's motion for judgment on the pleadings (Court File No. 9) and Defendant's motion for summary judgment (Court File No. 11). The magistrate judge filed an R&R (Court File No. 13) recommending the decision of the Commissioner be reversed and remanded, Plaintiff's motion of judgment on the pleadings be granted in part and denied in part (Court File No. 9), and Defendant's motion for summary judgment be denied (Court File No. 11). Defendant timely filed an objection to the R&R (Court File No. 14), to which Plaintiff did not file any response. For the following reasons, the Court will **ACCEPT** and **ADOPT** the magistrate judge's R&R (Court File No. 13).

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A. Medical History

Plaintiff was a thirty-seven-year-old woman at the time of the hearing. In June 2009 she applied for SSI alleging an onset date of November 29, 2007. Plaintiff claimed disability due to chronic obstructive pulmonary disorder ("COPD"), hepatitis C, and osteoporosis (Tr. 120). She reported pain in her back, neck, and hips, as well as pain and difficulty using her left arm following a shoulder injury (Tr. 32-33). Previously, she had experience doing masonry and stone work for her father, in addition to short term positions as a waitress, cashier, and dishwasher (Tr. 121).

Plaintiff was evaluated in September 2003 by Dr. Michael Sullivan (Tr. 212). She reported problems with pain, nausea, and weight loss as well as a history of COPD (Tr. 212-14, 219-24). A November 2004 biopsy revealed chronic hepatitis C (Tr. 205-08, 248).

In September 2008, Plaintiff began seeing Dr. Charlene Grigsby, who assessed Plaintiff with COPD and hepatitis C (Tr. 481). Dr. Grigsby also ordered a bone density scan which revealed Plaintiff was osteoporotic with a high risk of fracture (Tr. 475). She prescribed Fosamax to treat osteoporosis and referred Plaintiff to Dr. Manoj Srinath for hepatitis C treatments, which began in April 2009 (Tr. 407, 471-74). Dr. Srinath noted her viral levels were undetectable in July 2009 (Tr. 389).

In follow-up appointments with Dr. Grigsby, Plaintiff reported bone pain and fatigue regularly as well as problems with medication. For instance, Plaintiff experienced problems tolerating Fosamax (Tr. 451-53, 456-59) and Dr. Grigsby began prescribing Forteo for osteoporosis in May 2009 (Tr. 400).

In August 2009, Dr. Samuel Breeding examined Plaintiff (Tr. 484-87). He concluded Plaintiff could lift twenty-five pounds occasionally, sit for four to six hours in an eight-hour day,

stand for two to four hours in an eight-hour day, may need to recline periodically, and was unable to do sustained physical activity (Tr. 486). He also observed Plaintiff's gait and station were normal and she had a normal range of motion except for her left shoulder (*id.*).

In November 2009, Dr. Frank Pennington also completed a Physical Residual Functional Capacity Assessment ("PRFC") following a review of Plaintiff's medical records (Tr. 509-17). Dr. Pennington opined Dr. Breeding's assessment was too restrictive, given the lack of testing for COPD or arthritic sites (Tr. 515-16). He concluded Plaintiff could occasionally lift or carry twenty pounds and could frequently lift or carry ten pounds. He also noted she could stand, walk, or sit for up to six hours in an eight-hour day, was unlimited in her ability to push or pull, and could frequently perform postural limitations such as climbing, stooping, or kneeling (Tr. 510-13). He remarked Plaintiff's allegations were only partially credible, because her subjective complaints were out of proportion to the objective findings in the records he reviewed (Tr. 514).

Dr. Grigsby continued to treat Plaintiff, who occasionally reported pain, soreness, fatigue, or side effects of medication (Tr. 451, 463, 471). In December 2009 Plaintiff was hospitalized following increased weakness and bone and muscle pain in the preceding month (Tr. 604). Plaintiff was diagnosed with neutropenia and released after two days (Tr. 599-600). Her medications were discontinued pending evaluation by Drs. Grigsby and Srinath (Tr. 542).

Throughout 2010, Plaintiff continued to seek care from Dr. Grigsby. Her Forteo treatments for osteoporosis were discontinued by April 2010 after she lost her insurance. Plaintiff occasionally reported severe pain or fatigue (Tr. 573-74, 636).

In August 2010, Dr. Grigsby provided a medical assessment and opined Plaintiff could frequently and occasionally lift or carry up to 10 pounds, stand or walk for less than two hours in

3

an eight-hour day, and sit for less than six hours in an eight-hour day (Tr. 626-27). The stated bases for Dr. Grigsby's opinion were severe degenerative osteoarthritis in Plaintiff's spine, hips, knees, hands, and shoulders as well as severe osteoporosis with high risk of bone fracture (Tr. 626).

Plaintiff also has a history of mental health treatment. In 2004, Plaintiff was treated in a mental health hospital twice for having suicidal thoughts. Throughout the year she was diagnosed with or treated for polysubstance dependence, depression, bipolar affective disorder, opiate abuse, and adjustment disorder (Tr. 175-81, 182-83). In 2009, Dr. Srinath also referred her to mental health treatment based on potential side effects with her hepatitis C treatments (Tr. 372). In 2010 various mental health professionals conducted psychological evaluations regarding her mental limitations (Tr. 582-86, 629-31).

### B. Procedural Background

Plaintiff filed an application for SSI on June 5, 2009, alleging she had been disabled since November 29, 2007. Her claim was denied initially and upon reconsideration, and she sought a hearing before an Administrative Law Judge ("ALJ"). On September 10, 2010, a hearing was held, during which a vocational expert ("VE") testified Plaintiff would be precluded from any work existing in significant numbers if the ALJ fully credited Dr. Grigsby's opinion. Similarly, the VE testified Plaintiff would not be employable if the ALJ fully credited Plaintiff's testimony or assumed the limitations found in examining physician Dr. Breeding's opinion. However, when the ALJ asked the VE to instead consider the exertional limitations specified by consultative physician Dr. Pennington, the VE testified an individual with those limitations would have a slightly less than full range of light work available to them. He testified to a number of available jobs both in Tennessee and nationally.

The ALJ analyzed Plaintiff's claim under the five-step evaluation outlined in 20 C.F.R. § 416.920(a)(4) and made the following findings: (1) Plaintiff had not engaged in any substantial gainful activity since the application date of June 5, 2009; (2) Plaintiff had several severe impairments, including hepatitis C, osteopenia, osteoporosis, COPD, generalized anxiety disorder, polysubstance dependence, schizoid personality disorder, and depressive personality disorder; (3) Plaintiff did not have impairments that met or medically equaled a presumptively disabling impairment in 20 C.F.R. Pt. 404, Subpt. P, App'x 1; (4) Plaintiff was unable to perform her past relevant work; and (5) Plaintiff could perform jobs that existed in significant numbers in the national economy. The ALJ determined Plaintiff had the Residual Functional Capacity ("RFC") to perform a limited range of light work. Therefore, on November 8, 2010, the ALJ determined Plaintiff was not disabled.

Plaintiff sought review from the Appeals Council, which was denied. She then filed the instant action on June 1, 2012. In September 2012, Plaintiff filed a motion for judgment on the pleadings. She argued the ALJ erred in rejecting the opinions of treating physician Dr. Grigsby and consultative examiner Dr. Breeding. She additionally contended the ALJ erred in his assessment of Plaintiff's credibility. The Commissioner filed a motion for summary judgment and argued the ALJ properly considered Plaintiff's claims and substantial evidence supports both the ALJ's credibility finding and the rejection of the doctors' opinions.

The magistrate judge concluded the ALJ did not properly give good reasons for rejecting Dr. Grigsby's opinion and the rejection of the opinion was not supported by substantial evidence. The magistrate judge recommended Plaintiff's motion for judgment on the pleadings be granted in part to the extent it seeks remand and the Commissioner's motion for summary judgment be denied, and

the Commissioner's decision denying benefits be reversed and remanded. The Commissioner timely objected to the R&R.

## II.    STANDARD OF REVIEW

This Court must conduct a de novo review of those portions of the R&R to which objection is made and may accept, reject, or modify, in whole or in part, the magistrate judge's findings or recommendations. 28 U.S.C. § 636(b)(1). The Court's standard of review is essentially the same as the magistrate judge's – review is limited to determining if the ALJ's findings are supported by substantial evidence and if proper legal standards were used. 42 U.S.C. § 405(g); *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). "Substantial evidence" means evidence a reasonable mind might accept to support the conclusion at issue. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994). Substantial evidence is greater than a scintilla but less than a preponderance. *Brainard*, 889 F.2d at 681. If supported by substantial evidence, the Court must affirm the ALJ's findings, even if substantial evidence also supports the opposite conclusion. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003). The substantial evidence standard presupposes there is a zone of choice within which the decision makers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). The ALJ need not discuss every aspect of the record or explain every finding at length but must "articulate with specificity reasons for the findings and conclusions that he or she makes" to facilitate meaningful judicial review. *Bailey v. Comm'r of Soc. Sec.*, No. 90-3061, 1999 WL 96920, at *4 (6th Cir. Feb. 2, 1999).

## III.    DISCUSSION

The Commissioner argues the magistrate judge erred when she concluded the ALJ failed to comply with the treating physician rule. Specifically, the Commissioner contends the ALJ gave good reasons for rejecting Dr. Grigsby's opinion and the ALJ's decision was supported by substantial evidence. The ALJ rejected the opinion at issue by noting it was "not supported by [Dr. Grigsby's] own examinations of [Plaintiff] or those of other treating and examining sources" (Tr. 16-17). The Commissioner asserts the reasons provided are sufficiently specific to facilitate meaningful judicial review. For the following reasons, the Court agrees with the magistrate judge's conclusion that the ALJ did not provide good reasons for rejecting the opinion of Plaintiff's treating physician.

The administrative regulations implementing the Social Security Act impose standards on the weighing of medical source evidence. *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). In making a disability determination, an ALJ evaluates the opinions of medical sources in accordance with the nature of the work performed by the source. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013). Under the treating physician rule, an opinion from a medical professional who regularly treats the claimant must be given controlling weight if "(1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques;' and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Id.* at 376 (quoting 20 C.F.R. § 404.1527(c)(2)).[1] If the ALJ does not accord the treating physician's opinion

---

[1] Section 404.1527 is the "identically worded and interpreted rule applying to Federal Old–Age, Survivors and Disability Insurance." *Johnson-Hunt v. Comm'r of Soc. Sec.*, 500 F. App'x 411, 417 n.6 (6th Cir. 2012). Because Plaintiff in this case was only seeking supplemental security income, the ALJ applied 20 C.F.R. § 416.927(c)(2)-(6). The cases cited herein may apply to either regulation or both. Because the relevant portions of the regulations are interpreted identically, the Court has not distinguished between the cases. Both regulations were recently renumbered. Prior cases may have referred to subsection (d)(2) for either regulation, rather than subsection (c)(2),

7

controlling weight, then the opinion must be weighed based on a number of factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and whether the treating source is a specialist. 20 C.F.R. § 416.927(c)(2)-(6).

Additionally, the agency's regulations require the ALJ to provide "good reasons" for discounting a treating physician's opinion. 20 C.F.R. § 416.927(c)(2). "These reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Gayheart*, 710 F.3d at 376 (quoting SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996)). Failure to follow this procedural requirement "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007). Failure to give good reasons may require remand, because the rule exists to provide the claimant adequate notice and fair process. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009); *see also Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Here, the ALJ failed to provide good reasons for discounting the treating physician's opinion. The ALJ "rejected" the opinion of Dr. Grigsby, indicating he gave the opinion no weight (Tr. 16). He instead accorded "great weight" to the opinions of the state agency medical consultants and ultimately determined the claimant was not disabled (Tr. 16, 18). According to the ALJ, Dr. Grigsby's opinion did not merit controlling weight because "her opinion is not supported by her own examinations of the claimant or those of other treating and examining sources" (Tr. 16-17). The

where the treating source rule is currently codified.

8

ALJ additionally noted Dr. Grigsby's opinion was rejected because it was based primarily on the claimant's subjective complaints, which he determined were not fully credible (Tr. 16).

The Sixth Circuit recently discussed the level of specificity necessary to satisfy the good reasons requirement. In *Gayheart*, the Sixth Circuit held an ALJ's decision to deny social security disability benefits failed to provide good reasons for giving "little weight" to the treating physician's opinions. 710 F.3d at 376. The ALJ concluded the opinions were "not well-supported by any objective findings," which the Sixth Circuit found ambiguous, because "[o]ne cannot determine whether the purported problem is that the opinions rely on findings that are not objective (i.e., that are not the result of medically acceptable clinical and laboratory diagnostic techniques), or that the findings are sufficiently objective but do not support the content of the opinions." *Id.* at 377 (internal citation omitted). Additionally, the Sixth Circuit determined the ALJ failed to articulate the substantial evidence purportedly inconsistent with the treating physician's opinions. *Id.* Finally, the Sixth Circuit concluded the ALJ's examination of the frequency and nature of the physician's treatment relationship with the claimant as well as "alleged internal inconsistencies between the doctor's opinions and portions of her reports" were factors to be applied only *after* determining the opinion was not entitled to controlling weight. *Id.* Because of the ALJ's failure to comply with the good reasons procedural requirement, remand was required. *Id.* at 380.

The same conclusion is merited here. Regarding the Plaintiff's physical limitations, the ALJ does not specify the evidence he references when he states Dr. Grigsby's opinion is "not supported by the objective evidence" (Tr. 16). To the extent the ALJ claims Dr. Grigsby's opinion is not supported by those of other treating or examining sources, he does not identify the sources to which he refers; the only source whose opinion he seems to credit regarding Plaintiff's physical limitations

9

is Dr. Pennington, a nonexamining physician. The ALJ does provide some overview of Plaintiff's medical history, which if liberally construed could be read as substantiation for his decision to discount Dr. Grigsby's opinion. For instance, he characterizes Plaintiff's treatment history for pain and musculoskeletal symptoms as "well managed" and "without side effects" (Tr. 16). However, such statements appear to be made not in the context of evaluating a treating physician's opinion for controlling weight but rather regarding claimant's allegations of disability generally; the paragraph contains no specific reference to Dr. Grigsby and ends with the determination the claimant's allegations are not fully credible.

The Court determines the failure to provide good reasons was not harmless error and remand is required. As the Sixth Circuit recognized, a violation of the good reasons requirement could constitute harmless error under three circumstances: where the treating source's opinion was patently deficient; where the Commissioner made findings consistent with the treating source's opinion; or where the Commissioner otherwise met the goal of 20 C.F.R. § 416.927(c)(2). *Cole*, 661 F.3d at 940. In this case, Dr. Grigsby's opinion was not patently deficient on its face, the ALJ did not make findings consistent with the opinion, and the goal of the regulation is not met because the ALJ's decision does not permit meaningful judicial review. Therefore, the ALJ's violation of the treating physician rule was not harmless and the Commissioner fails to establish error on the part of the magistrate judge.

## IV. CONCLUSION

The Court has considered the Commissioner's objection after its complete review of the record, and has found it without merit. Accordingly, the Court will **ACCEPT** and **ADOPT** the magistrate judge's R&R (Court File No. 13). The Court will **GRANT** Plaintiff's motion for

judgment on the pleadings to the extent it seeks remand (Court File No. 9), and will **DENY**

Defendant's motion for summary judgment (Court File No. 11).  The Court will **REVERSE** and

**REMAND** the Commissioner's decision denying benefits.

      **An Order shall enter.**

                                    **/s/**_____
                                      **CURTIS L. COLLIER**
                                      **UNITED STATES DISTRICT JUDGE**